Filed 1/24/14  In re Thomas R. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re THOMAS R., a Person Coming Under the Juvenile Court Law. | B247000 (Los Angeles County Super. Ct. No. YJ33543) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>THOMAS R.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kevin L. Brown, Judge.  Reversed.

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Brendan Sullivan, Deputy Attorney General, for Plaintiff and Respondent.

_____

Thomas R. appeals from the juvenile court's order sustaining a petition and finding true the allegations that Thomas R., a minor, possessed a firearm and live ammunition. Thomas R. contends that the trial court erred in denying his motion to suppress his statement to police officers. We agree and reverse.

**BACKGROUND**

A Welfare and Institutions Code section 602 petition filed January 7, 2013, alleged that Thomas R., a minor, violated Penal Code section 29610 by possessing a firearm (count 1) and violated Penal Code section 29650 by possessing live ammunition (count 2).[1] Thomas R. denied the allegations and moved to suppress his statement to police. The trial court denied the motion to suppress and found the allegations true, declaring count 1 a felony and count 2 a misdemeanor. The court declared Thomas R. a continued ward of the court,[2] and ordered a camp community placement with a maximum term of 18 years and eight months, and 42 days of predisposition credit.

Thomas R.'s suppression motion argued that his arrest was without probable cause, and the warnings he received pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (*Miranda*) did not purge the taint of the illegal arrest, so that his statements, both oral and written, were inadmissible.

At the suppression hearing, Los Angeles Police Department Officer Abel Estopin testified that on January 3, 2013, he and his partner were on duty in the area of Byrnhurst Avenue and 67th Street. Officer Estopin saw Thomas R. standing where the sidewalk met the common driveway running between the two buildings of a six-unit apartment complex on Brynhurst, where Officer Estopin knew Thomas R. lived. Thomas R. was with three other people, Logan, Jenkins (who lived in another apartment in the complex),

---

[1] The petition alleges that the offenses occurred on January 3, 2012. The detention report and the testimony at the suppression hearing establish that the date of the alleged offenses was January 3, 2013. Thomas R. was born in April 1995, and was 17 years old on January 3, 2013.

[2] Thomas R. describes six prior section 602 petitions naming him, all of which had been sustained.

2

and Crook. Officer Estopin had had prior contacts with Logan, and had seen Jenkins. He knew that Thomas R. and Logan were on probation, and had seen Thomas R. hanging out with Logan four or five times in front of the apartment complex. Officer Estopin did a "probation compliance check" at the location, and found a loaded semiautomatic revolver in a portable barbecue grill adjacent to Thomas R.'s apartment, about 16-20 feet from the front door. The four males were standing about 50 feet away from the grill, with Thomas R. standing closest to it. Officer Estopin detained all four, handcuffed them, and told them he would be taking them to the station to conduct a follow-up investigation.

Two other units transported the four to the station. Once Thomas R. was checked in with the watch commander, Officer Estopin took Thomas R. to a separate room for juveniles, removed his handcuffs, and gave him *Miranda* warnings about 35–40 minutes after Officer Estopin found the gun. Thomas R. waived his rights in writing. Thomas R. told Officer Estopin what happened, and wrote: "'My aunt had a gun in our house inside the closet. I took the gun out of the closet on Monday and put it inside the . . . BBQ pit because I did not want to get a probation violation if they were to search our house. [¶] Today on 1-3-13 the police pulled up and stopped and talked to me. Officer Estopin searched the area and found the gun.'"

Officer Estopin testified that he did the probation search "[b]ecause [he] personally [has] recovered numerous handguns just in the area between 67th and Hyde Park on Brynhurst both at the location where they were at and the location next door," and he formed an opinion that one of the four might be concealing a weapon or contraband. His prior contacts with Thomas R. involved him "hanging out basically with area gang members" from the Rollin 60's gang. Area residents had told Officer Estopin that Thomas R. was a member of the gang, and he had recovered handguns from other Rollin 60's gang members on Brynhurst, including some of Thomas R.'s neighbors. Officer Estopin knew that Logan (Thirsty), Jenkins (E-Dog), and Crook (Tiny S-Mac) were Rollin 60's members.

Asked if he knew whether Thomas R.'s probationary conditions included gang conditions, Officer Estopin responded: "I believe the actual condition laid out is worded

3

to the effect that the minor is not to hang around with anyone that I believe the parents disapprove of."[3] He believed that part of the gang conditions was that the minor was not to associate with other gang members. Officer Estopin also knew that there was a gang injunction in effect, a court order stipulating that members of the Rollin 60's gang were not to congregate, hang around, or commit any criminal activity within a particular safety zone that included the area. He did not know whether Thomas R. was one of the gang members identified in the injunction, but he did know that gang conditions were imposed as part of Thomas R.'s probation.

On cross-examination, Officer Estopin testified that he did not know with whom Thomas R. lived, but knew he lived at that apartment. When he saw Thomas R. on January 3, 2013, Officer Estopin knew he was on probation, and he had read the terms of Thomas R.'s probation months before. He verified the probation terms again at the station after the detention, but he did not recall the exact conditions that had to do with gangs. When asked, "Does this sound familiar? Tell me if this is the term that you reviewed: probation condition no. 15, letter A, 'do not participate in any type of gang activity?'" Officer Estopin responded "If it's worded that way, then yeah, that would be it. That sounds like a typical probation condition that is placed on juveniles with gang conditions, correct." He knew before he transported Thomas R. to the police station that Thomas R. and Logan had gang conditions as part of their probations. Thomas R. was not on the list of named gang members in the Rollin 60's gang injunction, and he did not know whether Jenkins or Logan were on the list.

Thomas R.'s attorney argued that there was no probable cause to arrest Thomas R. The gun in the barbecue was too far away from Thomas R., and could have been put there by anyone. The prosecutor argued that Thomas R. was in violation of his probation "by being in and associating himself with other gang members," meaning Logan, Jenkins, and Crook, and the officer therefore had probable cause to arrest him for the probation violation. Asked by the court if "a reasonable officer would have known that

---

[3] The prosecution did not argue that this condition was violated.

4

[Thomas R.] was in violation of probation conditions because he was with known gang members," and if that was a legal basis to arrest Thomas R. and transport him to the police station, the prosecutor answered, "Correct." The prosecutor clarified that the gang injunction was not a legal basis for the arrest, because there was not sufficient evidence that Thomas R. was served with the injunction, and the basis for the probation violation was his "associating with two gang members." Defense counsel agreed that if the officer believed that Thomas R. "had a probation condition that he not associate with gang members and then was seen hanging out with gang members," there would be probable cause to arrest Thomas R. The parties then stipulated that Thomas R.'s probation condition was "the standard 15(A), which reads 'Do not participate in any gang activity.'"[4] Defense counsel argued that Officer Estopin "did not observe Thomas [R.]participating in gang activity. He observed him talking to three other guys."

The trial court denied the motion to suppress. The gang condition was "[d]on't engage in gang activity." Officer Estopin had to make the initial decision whether Thomas R. was engaged in gang activity. Officer Estopin was aware of the condition; "if he wasn't aware that . . . there was prohibition against gang activity, then I would grant your motion." The court thought "it is reasonable for a police officer knowing that this is a Rollin 60's area, knowing that there is an anti-gang injunction against the Rollin 60's in this area, knowing that the injunction prohibits associating with two Rollin 60's— according to what he said, two Rollin 60's can't be together. Knowing these things, when he sees Thomas R. with two Rollin 60's, I believe it would give a reasonable police officer a strong suspicion that Thomas R. was engaged in gang activity, that activity being associating with members of the Rollin 60's. [¶] Whether that would be ultimately found a probation violation is debatable. You would have a strong argument, for example, that well, he had never been served with the injunction, therefore it was not illegal for him to associate . . . [with] the others. He didn't violate the injunction because

---

[4] Condition 15A in Thomas R.'s probation conditions reads: "Do not participate in any type of *known* gang activity." (Italics added.)

5

he hadn't been served." The court acknowledged that Thomas R. could argue he was not engaged in gang activity because he was simply "[h]anging around with a couple of other gang members. They weren't doing anything. [¶] But I believe that a reasonable officer would conclude that a violation of the gang injunction would be engaged in gang activity. That would be enough to arrest him. [¶] . . . I believe a reasonable officer in this case would have a strong suspicion. I believe the arrest was legal and valid given the fact that Thomas [R.] was on probation." Although Thomas R. "was arrested for the gun," the court declined to rule on whether the gun provided probable cause for the arrest "because [the court found] it legal on other bases."

At the adjudication, Thomas R. testified that at the time of the arrest he was living in the apartment on Brynhurst with his cousin over winter break from high school, although he usually lived with his mother in Inglewood. His aunt was also staying with his cousin and kept her clothing in the same closet as Thomas R. On New Year's Eve 2012, Thomas R. was looking for his clothes, knocked over a shoe box belonging to his aunt, and a gun fell out. He took the gun outside and put it in the barbecue. The next day he told his aunt that he put the gun in the barbecue because he would be in violation of his probation if the police found it. His aunt said he should just leave it there, and she would find somewhere else to put it. The court found the allegations true, indicating that the court did not believe that Thomas R. had possessed the gun only for a moment, or that the gun belonged to his aunt.

## DISCUSSION

On appeal, Thomas R. argues that his arrest was unsupported by probable cause, making inadmissible the statement he made at the police station. We agree.

In reviewing the trial court's ruling on the motion to suppress, we defer to the trial court's factual findings, express or implied, where they are supported by substantial evidence, but exercise our independent judgment in determining the legality of the search based on the established facts. (*People v. Tully* (2012) 54 Cal.4th 952, 979.)

Thomas R. does not argue that the search conducted by Officer Estopin was unlawful. An officer must have advance knowledge of a probationary search condition or

6

reasonable suspicion of criminal activity to justify the search of a juvenile on probation. (*In re Jaime P.* (2006) 40 Cal.4th 128, 139.) "Because a probationer subject to a search condition lacks a reasonable expectation of traditional Fourth Amendment protections, a police officer may search him or her without any reasonable suspicion of criminal activity, so long as the search is not undertaken for harassment or for arbitrary or capricious reasons or in an unreasonable manner. [Citation.]" (*People v. Durant* (2012) 205 Cal.App.4th 57, 64.) Officer Estopin testified that the search in which he discovered the gun in the barbecue was a probation compliance check. Thomas R. was subject to a probation condition requiring that Thomas R. "[s]ubmit person, residence or property under his/her control to search and seizure at any time of the day or night by any law enforcement officer, with or without a warrant." There was no evidence at the suppression hearing whether or not Officer Estopin knew whether Thomas R.'s probation conditions included such a search condition, and in this appeal, Thomas R. does not raise the issue whether Officer Estopin was aware of the condition.

Once Officer Estopin discovered the loaded semiautomatic revolver in the barbecue, located near to what he knew to be Thomas R.'s residence at the time, he arrested Thomas R. and the three other men. The prosecutor did not argue at the suppression hearing that the discovery of the gun gave Officer Estopin probable cause to arrest Thomas R. Instead, the prosecutor argued that probable cause existed because the officer had reasonable suspicion that Thomas R. was in violation of his probation conditions by "associating himself with other gang members." The trial court explicitly declined to rule on whether the gun provided probable cause for the arrest.

On appeal, respondent argues that the discovery of the gun gave Officer Estopin grounds to conduct a brief "investigative detention," recharacterizing the arrest as such a detention. The prosecutor did not make this argument in the trial court, and we "should not consider a Fourth Amendment theory for the first time on appeal when 'the People's new theory was not supported by the record made at the first hearing and would have necessitated the taking of considerably more evidence . . .' or when 'the defendant had no

7

notice of the new theory and thus no opportunity to present evidence in opposition.' [Citation.]" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1242.)

The issue properly before us and decided in the affirmative by the trial court is whether Thomas R.'s arrest was supported by probable cause for Officer Estopin to believe that Thomas R. had violated a probation condition. Using our independent judgment, we disagree with the trial court's conclusion that the search was legal based on the facts as established at the suppression hearing. We conclude that Officer Estopin lacked probable cause to arrest Thomas R. for violating a condition of his probation.

As an initial matter, we note that Thomas R.'s probation condition 15A reads: "Do not participate in any type of *known* gang activity." (Italics added.) This wording complies with the requirement that "conditions of probation must include scienter requirements to prevent the conditions from being overbroad. [Citations.]" (*People v. Patel* (2011) 196 Cal.App.4th 956, 960.)[5] "'Probable cause exists when the facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested has committed a crime. [Citation.]'" (*People v. Scott* (2011) 52 Cal.4th 452, 474.) A police officer relying on a probation condition to justify activity implicating the Fourth Amendment "must know of that condition when he acts, and may not rely on subsequently acquired information about the person's probationary status." (*People v. Durant*, *supra*, 205 Cal.App.4th at p. 64.)

At the suppression hearing, Officer Estopin initially testified that he had read the terms of Thomas R.'s probation before the events on January 3, 2013, but he did not recall the conditions. Officer Estopin repeatedly stated that he believed Thomas R. was prohibited from associating with other gang members. No such prohibition appears in Thomas R.'s probation conditions. Although condition 15 states that Thomas R. is not to "associate with . . . anyone known by minor to be disapproved of by . . . parents [or]

---

[5] Because we conclude that Officer Estopin lacked probable cause to arrest Thomas R., we do not reach Thomas R.'s argument (which he did not make in the trial court) that the probation condition is overbroad because it is not limited to *criminal* gang activity.

8

Probation Officer," the prosecution did not argue (and respondent does not argue on this appeal) that condition as a basis for probable cause. When he was asked whether "do not participate in any type of gang activity" sounded familiar, Officer Estopin stated that would be a typical gang probation condition placed on juveniles, and that he knew that Thomas R. had "gang conditions as a term of his probation" when he transported him in handcuffs to the police station. Officer Estopin's testimony, though belated, was substantial evidence to support the trial court's implied factual finding that Officer Estopin knew that Thomas R.'s probation included a condition prohibiting participation in known gang activity.

We disagree, however, with the trial court's legal conclusion that the search was legal because Officer Estopin could reasonably believe that Thomas R. was in violation of his probation condition prohibiting participation in known gang activity. Officer Estopin simply observed Thomas R., who area residents had told him was a Rollin 60's member, standing outside the apartment with three men who Officer Estopin knew were members of the gang. Although the Rollin 60's gang was subject to a gang injunction, Officer Estopin stated that he did not know whether Logan and Jenkins were named in the injunction, and he knew that Thomas R. was not. There was no testimony that Thomas R. even knew of the injunction or its terms. Officer Estopin thus could not reasonably believe that Thomas R. was in violation of the gang injunction by standing in the driveway. As a result, the facts known to Officer Estopin at the time he saw Thomas R. standing in the driveway with the other men would not persuade a reasonably cautious person that Thomas R. was participating in known gang activity and thus violating his probation condition. To conclude otherwise would defy common sense. Standing with three others might provide probable cause to believe that an individual is engaged in association, but it does not provide probable cause to believe that the individual is participating in known gang activity.

Officer Estopin lacked probable cause to arrest Thomas R. The subsequent *Miranda* warnings do not purge the taint of the illegal arrest. (*Brown v. Illinois* (1985)

9

422 U.S. 590, 602–605 [95 S.Ct. 2254, 45 L.Ed.2d 416].)  The trial court erred in denying the motion to suppress.

**DISPOSITION**

The juvenile court's order is reversed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


MILLER, J.[6*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.